IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RACHEL LYNN PERRY, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:10-cv-00175 (AJT/IDD) |
| COMPUTER SCIENCES CORPORATION, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This employment discrimination and retaliation case is before the Court on Defendant Computer Sciences Corporation's ("CSC") Motion for Summary Judgment (Doc. No. 21). A hearing was held on this motion on August 27, 2010, following which the Court took the motion under advisement. For the reasons stated below, the motion will be granted.

### I. BACKGROUND

The following facts are undisputed:

On October 31, 2005, Plaintiff Rachel Lynn Perry ("Perry") started working at CSC as an Affirmative Action Specialist ("AAS") in the Affirmative Action Department. Perry's first direct supervisor was Dorothy Eltzroth ("Eltzroth") and then from July 2006, she was supervised by Lisa O'Lalde ("O'Lalde"), though Eltzroth remained the Director of Employee Relations and Affirmative Action and oversaw the entire department.

Throughout her tenure at CSC, Perry applied but was not hired for four different Compliance Management positions supervised by Melinda Evans ("Evans"), CSC's Director of Human Resources, Global Compliance and Diversity. In early 2006, Perry applied and was interviewed by Evans for the first of the Compliance Management positions. She was not selected because by the time of Perry's interview, Evans had selected another candidate. Sometime in 2006, Perry filed an internal complaint of discrimination and retaliation, which CSC subsequently determined was without merit.

On November 9, 2007, O'Lalde conducted Perry's performance review for 2007 and rated Perry as only partially meeting performance expectations. Based on that review, O'Lalde placed Perry on a Performance Improvement Plan ("PIP") and as a result Perry was not eligible for a pay increase at that time. Upon reviewing her performance evaluation, Perry experienced heart problems that caused her to take a medical leave of absence from November 9, 2007.[1] After this incident, Perry filed a complaint with the Office of Federal Contract Compliance Programs ("OFCCP") alleging that CSC failed to accommodate her disability. Perry ultimately withdrew that complaint on or about February 2, 2008.

On November 16, 2007, while on medical leave, Perry applied for the position of Senior Compliance Manager. Due to budget constraints, Evans cancelled the job posting for Senior Compliance Manager and reposted a new position for Compliance Manager. Perry applied for this newly posted position on or about December 13, 2007. Evans did

---

[1] The record is not clear as to what date Perry returned from this leave. In her deposition testimony, Perry stated that she returned on or about December 9, 2007, although Perry's Complaint states she returned in mid-October 2007. CSC states that Perry commenced working under the PIP on January 22, 2008 suggesting that she returned on that date. In any event, these conflicts are not material.

2

not consider Perry's application at this time because Perry remained on the PIP and Evans ultimately hired another individual for the position.

After returning from medical leave, Perry successfully completed the PIP on April 22, 2008. On July 22, 2008, she applied for another Compliance Manager position. This Compliance Manager position differed from the positions posted in 2007 because it had a "global" rather than "U.S." focus. Evans interviewed Perry for this position. As latter discussed, Perry alleges that Evans asked irrelevant questions during the interview. After the interview, Evans asked Perry to prepare an assignment consisting of a white paper and PowerPoint presentation on record-keeping requirements in the nineteen countries in which CSC conducts business. This occasion was the first time that Evans gave such an assignment as part of the interview process and Perry was the only applicant to complete the assignment. Nevertheless, Evans did not select Perry for the position because she believed, based on Perry's interview and written submission, that Perry lacked a background in the global activities of CSC and that her experience was focused on CSC's operations in the United States. Although the position was then relisted for applicants outside of the company, it was never filled and ultimately the job posting was cancelled.

On September 11, 2008, Perry filed a second complaint with the OFCCP alleging that CSC's failure to hire her for the Compliance Manager positions was discriminatory based on her disability and veteran status and retaliatory for her first OFCCP complaint. On February 2, 2009, the OFCCP interviewed Evans regarding Perry's complaint. On October 19, 2009, the OFCCP determined that Perry's allegations lacked merit.

On September 26, 2008, O'Lalde considered Perry for a mid-cycle pay increase as she was not eligible for a pay increase during the November 2007 review due to her

3

performance rating. Because Perry had successfully completed the PIP and sustained a satisfactory level of performance, O'Lalde processed a salary increase for Perry.

On October 13, 2008, due to her increasing back problems, Perry began another period of leave under the Family & Medical Leave Act ("FMLA"). According to CSC's leave policy, Perry was required to submit monthly updates from her doctor to her disability leave coordinator, Shamesa Chesson ("Chesson"). The policy also required Perry to provide Chesson with a doctor's work clearance before her return. Perry's doctor first expected her to return to work in six to eight weeks. However, on December 4, 2008, approximately ten weeks later, her physician's update did not provide a date when Perry would be able to return to work.

On January 4, 2009, Perry's FMLA leave expired. In accordance with CSC policy, Perry took unpaid medical leave status and was eligible to remain on unpaid leave for up to one year. On January 26, 2009, O'Lalde reported to Chesson that she had spoken to Perry and expected Perry to undergo her final round of prescribed treatment that week, followed by four to six weeks of physical therapy. Perry informed Chesson later that same day that she was seeing her physician that week and would send Chesson an updated medical report. On January 31, 2009, Perry's physician submitted another report that stated that Perry would be examined again on February 16, 2009, but did not provide a return date.

As of January 2009, CSC's Affirmative Action Department had seven AAS positions and two Data Analyst ("DA") positions. At that time, two AAS positions were open, one of which was Perry's position before she went on FMLA leave, and the other was created when Lynn Hull, another AAS, resigned her position in December 2008. In

addition, CSC had one open DA position. On December 23, 2008, O'Lalde (not Eltzroth) told Perry that Hull had resigned and that she was considering replacing Hull's AAS position with an additional DA position.

Sometime in early February 2009, Eltzroth decided to restructure the Affirmative Action Department because "the work activity that was going on and the skill mix that was needed to perform that work led [her] to the decision that [she] needed to reclassify one of the [AAS] positions to get the right head count and skill mix." Deposition of Dorothy Eltzroth, June 15, 2010, 65:19-66:3. At the same time, Eltzroth was concerned that without filling the open AAS position, CSC would not be able to meet its OFCCP compliance obligations. "I did not believe that we could complete the work activity without replacing that [AAS] position." Eltzroth Dep. 90:7-13. For this reason, Eltzroth decided to fill a vacant AAS position and replace another AAS position with a DA position, thus eliminating a position for Perry in the Affirmative Action Department. Towards that end, sometime in early February, CSC posted a job announcement for an AAS position, listing it as a replacement for Lynn Hull's position. Perry claims she did not apply for this position because she did not know that it was posted, and in any event, she believed she could return to her old AAS position.

On March 4, 2009, CSC offered the posted AAS position to Ida Frueh ("Frueh"). At the time CSC offered the position to Frueh, Eltzroth knew that she would be converting or had converted the other AAS position to a DA position, thereby eliminating the position left vacant by Perry.

On March 6, 2009, Frueh accepted the AAS position. Three days later, on March 9, 2009, Perry provided a note from her doctor stating that she should not return to work

5

until May 9, 2009. On March 10, 2009, Perry called O'Lalde and told her that she could come back to work so long as the company accommodated her physical therapy appointments, if necessary, but O'Lalde told her that would not be necessary. Frueh started as an AAS on March 21, 2009 and the two DA positions were filled on March 23 and 30, 2009.

By April 8, 2009, Eltzroth and O'Lalde, with the advice of CSC lawyer Bob Gantz, were in the process of drafting a letter to inform Perry that her position had been eliminated due to the Affirmative Action Department's reorganization. They sent this letter on April 15, 2009 and Perry received it the next day on April 16, 2009. However, it appears that Perry's employment with CSC was not formally terminated at that time. On April 29, 2009, Perry submitted to CSC a doctor's note that certified her as fit to return to work. The next day, CSC terminated Perry's employment because she was no longer on medical leave and her former position no longer existed.

## II. PLAINTIFF'S CLAIMS AND ALLEGATIONS

On January 19, 2010, Perry filed an action against CSC in the Circuit Court for Alexandria, Virginia alleging the wrongful denial of a pay increase (Count I); disability discrimination and unlawful retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (Counts II through V); and failure to reinstate her after authorized leave in violation of the FMLA, 29 U.S.C. § 2601, *et seq.* On February 24, 2010, the Complaint was removed to this Court.

Briefly summarized, Perry alleges in support of these claims that CSC delayed giving her a pay increase that was due in April 2008 until October 2008 because of her

disability and protected activity. She further alleges that she was not hired for three separate Compliance Manager positions as a result of discrimination based on her disability and in retaliation for complaining of such discrimination. In that connection, Perry alleges that Eltzroth decided to reorganize the Affirmative Action Department, thus eliminating Perry's position, because of Perry's disability and in retaliation for Perry's OFCCP complaints. She further alleges that CSC's termination of her employment violated the FMLA. CSC moves for summary judgment as to all of Perry's claims.

## III. STANDARD OF REVIEW

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly
7

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## IV. ANALYSIS

In the absence of direct evidence of discriminatory conduct, a plaintiff alleging employment discrimination is subject to the burden-shifting framework set forth in *McDonnell Douglas* and its progeny.[2] *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000). The *McDonnell Douglas* framework applies to claims of discrimination based on disability under the Rehabilitation Act as well as the ADA.[3] *See Ennis v. Nat'l Ass'n of Business and Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995).

Under the *McDonnell Douglas* burden shifting framework, within the context of a claim alleging a failure to hire or promote, a plaintiff must prove that: (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

[3] In order to establish a violation of the ADA, the plaintiff must prove: (1) that she has a disability; (2) that she is otherwise qualified for the employment or benefit in question; and (3) that she was excluded from the employment or benefit due to discrimination solely on the basis of the disability. *See Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). CSC bases its motion only on the third prong of that analysis, which Perry is entitled to prove via the *McDonnell Douglas* framework.

8

giving rise to an inference of unlawful discrimination. *See Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Brown v. McLean*, 159 F.3d 898 (4th Cir. 1998).[4] If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). The employer's burden is one of production, not persuasion, and does not involve a credibility assessment. *Id.* If the employer meets this burden, "the *McDonnell Douglas* framework - with its presumptions and burdens - disappear, and the sole remaining issue [is] discrimination *vel non*." *Hill v. Lockheed Martin Logistics Mgmt*, 354 F.3d 277, 285 (citing *Reeves*, 530 U.S. at 142-43) (internal quotation marks omitted).

At this point, the burden becomes the plaintiff's to show by a preponderance of the evidence that the employer's stated reasons were a pretext for discrimination. *See Reeves*, 530 U.S. at 143; *Hill*, 354 F.3d at 285. Circumstantial evidence that the employer's explanation is false is probative of intentional discrimination. *See Reeves*, 530 U.S. at 146-47. Therefore in some cases, a plaintiff's "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 530 U.S. at 148; *see also* Laber v. Harvey, 438 F.3d 404, 431 (4th Cir. 2006).

---

[4] The parties agree that the elements of a prima facie case in this context are that: (1) the plaintiff is a member of the protected class; (2) she applied and was qualified for the job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of her qualifications. The Court applies the above described test articulated by the Fourth Circuit in the failure to promote and failure to hire context. Nevertheless, the Court reaches the same conclusions under the test the parties propose.

The same *McDonnell Douglas* burden shifting framework also applies to claims of retaliation. *See Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006); *Luther v. Gutierrez*, 618 F. Supp. 2d 483, 490 (E.D. Va. 2009). To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between the protected activity and the adverse action. *See Laber*, 438 F.3d at 432. If the plaintiff establishes a prima facie case, then the remainder of the *McDonnell Douglas* framework outlined above applies. *Id.*

Although other issues exist, which will be discussed as well, based on the briefing and the argument of counsel at the hearing held on Defendant's Motion for Summary Judgment on August 27, 2010, the parties are in agreement that a dispositive issue is whether the plaintiff has adduced sufficient evidence to raise a triable issue concerning whether CSC's proffered justifications for its actions were a pretext for discrimination and retaliation against Perry.

### A. Failure to Promote

Perry alleges CSC violated the ADA and the Rehabilitation Act by failing to select her for three separate Compliance Manager positions on account of her disabilities despite the fact that she was best qualified for each position (Count II).[5] Perry also alleges that CSC's failure to promote her to any of these positions was retaliation for her protected activity of reporting disability discrimination to the Department of Labor (Count III). The Court will address each application separately.

---

[5] It appears that Perry applied for four Compliance Manager positions, one in early 2006 and the others in November 2007, December 2007, and July 2008. Because it is unclear which three positions Perry is referring to in her Complaint as the basis for her claims, the Court addresses all four Compliance Manager positions for which she applied.

10

i.   *The job application made in early 2006*

The ADA and the Rehabilitation Act do not contain statutes of limitations, and therefore the most analogous state statute of limitations applies. Federal courts sitting in Virginia have determined that the Virginia Rights of Persons with Disabilities Act's ("Virginia Act") one-year statute of limitations is the most analogous state statute of limitations for actions brought under the Rehabilitation Act and the ADA. *See Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 224-25 (4th Cir. 1993) (Virginia Act's one-year statute of limitations applies to actions under the Rehabilitation Act); *A Society Without a Name for People without a Home Millennium-Future-Present ("ASWAN") v. Commonwealth of Virginia*, 699 F. Supp. 2d 787, 799 (E.D. Va. 2010) (Virginia Act's one-year statute of limitations applies to actions under the ADA). A claim accrues when the plaintiff either becomes aware of her injury or has reason to know of the injury that forms the basis of her claim. *See ASWAN*, 699 F. Supp. 2d at 799.

Perry's discrimination and retaliation claim as it relates to the early 2006 application is time barred. Perry's cause of action for discrimination accrued in 2006 during which year she applied, interviewed, and was not hired for the first Compliance Manager position, and also filed an internal complaint of discrimination. Perry filed the Complaint in this action against CSC in Circuit Court in Alexandria on January 19, 2010, well past the one-year limitation period.

i.   *The job application on November 16, 2007*

Perry fails to establish a prima facie case of discrimination as to her November 16, 2007 application for a Senior Compliance Manager position. Specifically, Perry fails to show that she was not given the Compliance Manager position under circumstances

11

giving rise to an inference of unlawful discrimination. The record indicates that due to budget cuts CSC did not interview anyone for this position. CSC cancelled this position on December 4, 2007.[6] The Court cannot draw any reasonable inference of unlawful discrimination from this evidence. Even assuming Perry met her burden of stating a prima facie case, CSC has articulated a legitimate, non-discriminatory reason for not hiring Perry - that the job was cancelled due to budget constraints, and no evidence has been offered to rebut CSC's reason or to suggest that it was a pretext for discrimination. Likewise, Perry has not made out a prima facie case of retaliation. Specifically, there is no evidence in the record that supports a finding of a causal link between Perry's November 2007 OFCCP complaint and CSC's decision to terminate this position due to budget constraints.

    ii.    *The job application on December 13, 2007*

Perry cannot establish a prima facie claim of discrimination as to her December 2007 application for the Compliance Manager position. Specifically, she failed to show that she was qualified for the position at the time she applied. At the time of her application, Perry's supervisor rated her performance in the Affirmative Action Department as only partially meeting performance expectations and as a result placed her on the PIP which sought to remedy her underperformance. Because Perry's performance was below a satisfactory level, she cannot show that she was qualified for this new position or a promotion. Furthermore, from the evidence produced, the Court cannot

---

[6] CSC reposted the position at lower seniority and at a lower pay grade due to the budget constraints. Perry applied to this reposted position on December 13, 2007 and is discussed in Part IVA(ii).

draw any inference of unlawful discrimination from CSC's failure to promote or hire her in a new position when she had an unacceptable status in her current position.

Similarly, Perry cannot state a claim for retaliation because she cannot show that there was a causal link between her OFCCP complaints and Evans' decision not to interview her. Even if Perry did state a prima facie case for discrimination or retaliation, CSC met its burden of showing that she was not interviewed for this position because of her performance rating in her current position, thus showing a legitimate, nondiscriminatory reason for their decision. Perry produced no evidence to create a triable issue concerning whether this reason was a pretext.

      iii.    *The job application on July 22, 2008*

As to Perry's July 22, 2008 job application, Perry fails to meet her burden both to state a prima facie case or, in the alternative, to show that CSC's proffered reason for not hiring Perry was pretextual. Although there is some dispute over whether Evans' initial job posting indicated that the job required global expertise and whether other applicants received the assignment required of Perry, none of these disputes are material. See *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") Regardless of the job description, it is undisputed that this position required global expertise. It is also undisputed that Evans could not find an adequate candidate and the job requisition was ultimately cancelled.

First, Perry has not presented any evidence from which the Court could infer that she was qualified for this particular position. On the other hand, CSC has produced

evidence that shows that Perry was not selected for this position because she lacked a background in the global activities of the company and her experience was limited to the company's United States operations. Under the *McDonnell Douglas* framework, the burden shifts to Perry to show that CSC's stated reason for failing to promote her was a pretext for discrimination. Perry failed to meet this burden.

Perry contends that the pretext is demonstrated by the following evidence: (1) the job posting did not indicate global experience as a requirement; (2) before interviewing Perry, Evans discouraged Perry from applying because the position was challenging; (3) Evans delayed Perry's interview for several weeks; (4) Perry was the only person to submit the required assignment; and (5) the questions asked during the interview were irrelevant and the length of the assignment made it impossible to address all of the questions raised.

Drawing from these facts all inferences in favor of Perry, the Court concludes that Perry has not adduced sufficient evidence that establishes or allows a reasonable inference that CSC's stated reason was a pretext for discrimination. Regardless of the initial job posting, the interview and the assignment clearly indicated the global nature of this position. Further, the second, external posting of the job assignment did modify the requirements to indicate the position's global concentration. Further, despite Evans' discouragement or warnings regarding the difficulty of the position, Evans considered Perry for the position. Evans' slight delay in conducting the interview is not sufficient to raise the required inferences.

Finally, regardless of whether other applicants were given or completed the same assignment, the assignment required of Perry as part of the interview process was a

reasonable and legitimate request designed to assess her qualifications for the job. In the end, Evans believed that her work product and interview showed that she lacked the necessary knowledge for the job. It is not for the Court to judge an employer's non-discriminatory decision regarding an applicant's experience. *See Grier v. Injured Worker's Ins. Fund*, 2 F. App'x. 386, 387 (4th Cir. 2001) (it is not for the court to second-guess an employer's evaluation of an employee's experience). The Court must evaluate only whether CSC has articulated a legitimate, non-discriminatory reason for not selecting Perry, a burden CSC has met. *See DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998) (when an employer articulates a reason for the adverse action not forbidden by law, it is not the court's province to decide whether the reason was wise, fair, or even correct) (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410-411 (7th Cir. 1997)). CSC's evaluation of Perry is material, not Perry's own self-assessment. *See DeJarnette*, 133 F.3d at 299 (noting that it is the perception of the decision maker that is relevant, not the applicant's self-assessment). For these reasons, Perry failed to adduce sufficient evidence that CSC's reason for not hiring her was a pretext for discrimination.

Perry also fails to establish prima facie case of retaliation as it relates to her July 22, 2008 application. Perry withdrew her first OFCCP complaint on February 2, 2008 and that complaint was focused on her treatment in the Affirmative Action Department. Perry did not file her second complaint with the OFCCP until September 11, 2008, more than a month after Evans' decision not to hire Perry. Therefore Perry cannot establish the causal link between her protected activity and Evans' decision not to hire Perry. *See*

*Walker v. Gambrell*, 647 F. Supp. 2d 529, 539 (D. Md. 2009) (finding no causal link to an adverse employment action that occurred before the protected activity).

### B. Denial of Pay Increase

Perry alleges that because of her disability and protected activity CSC did not give her a pay increase that was due to her in April 2008 until October 2008 (Count I). Perry fails to meet her burden of establishing a prima facie case. Specifically, she has not adduced evidence sufficient to show that she was qualified to receive a pay increase before she did. It is undisputed that she did not receive a pay increase during her November 2007 evaluation because of her poor performance review. After she successfully completed the PIP on April 22, 2008 and sustained satisfactory performance for four months, O'Lalde processed Perry's pay increase. Perry produced no evidence aside from her own statements that she was eligible for a pay increase earlier.

Perry further failed to produce any evidence showing that the denial of a pay increase was related to her disability or protected activity, particularly since she did receive a pay increase after she filed her complaint with the OFCCP.

### C. Termination

Perry alleges that she was terminated from CSC on account of her disability in violation of the Rehabilitation Act and the ADA (Count IV). She further alleges that her discharge was retaliatory for engaging in a protected activity, specifically her filing a second complaint with the OFCCP (Count V).

The Court will assume for the purposes of defendant's summary judgment motion that Perry met her burden of producing sufficient evidence to establish a prima facie case

both for discrimination and retaliation.[7] However, Perry failed to rebut CSC's proffered legitimate, nondiscriminatory reason for her firing or raise a triable issue as to whether it was a pretext.

While Perry was on leave, Eltzroth decided to restructure the department to meet its growing technical requirements by converting one of the two open AAS positions to a DA position. In that regard, Eltzroth was also concerned that if CSC did not hire another AAS, it would not meet its compliance obligations. For these legitimate, nondiscriminatory reasons CSC offered an AAS position to Frueh and converted an AAS position into a DA position, thus eliminating a position for Perry in the Affirmative Action Department. It is undisputed that by February 3, 2009, the date Perry contends Eltzroth decided to restructure the Affirmative Action Department, Perry had not provided Chesson, Perry's disability leave coordinator, a date by which she would be able to return to work. CSC's decision to restructure the department and eliminate the AAS position previously held by Perry was legitimate, non-discriminatory conduct. *See Brown v. Maryland-Nat'l Capital Park, Planning Comm'n*, 162 F.3d 1154 (4th Cir. 1998) (finding that employer's stated reason for reorganizing – a desire to conserve resources and create more efficient bureaucracy, was a sufficient, nondiscriminatory reason).

---

[7] The *McDonnell Douglas* framework described above equally applies to the analysis of unlawful termination brought under the ADA. *Ennis*, 53 F.3d at 58. A plaintiff must prove by a preponderance of the evidence that (1) she was in a protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Id.* Once a plaintiff establishes the prima facie case, the rest of the *McDonnell Douglas* framework described above applies. *Id.* at 58. The standard for retaliation is the same as described above.

Perry also has not met her burden of showing that CSC's proffered reason was a pretext for discrimination. Perry contends that the following facts show that CSC's reason for terminating her was pretextual: (1) Eltzroth's decision to reorganize a day after Evans was interviewed by the OFCCP; (2) CSC's reorganization only eliminated a position for Perry; and (3) CSC delayed notifying Perry that her job was eliminated until April 16, 2009.

The Court finds these facts insufficient to meet Perry's burden. First, it was Eltzroth, not Evans, who made the decision to reorganize the department. In addition, as Perry explains, her OFCCP complaint did not concern her treatment in the Affirmative Action Department, but rather Evans' failure to hire her for a Compliance Manager position. Second, while Perry was the only person in the Affirmative Action Department to lose her job as a result of the reorganization and while it may have been preferable for CSC to have informed Perry sooner of the reorganization, there is no evidence that it was motivated by discriminatory animus; and it is not for the Court to evaluate the wisdom of business practices so long as they are not discriminatory. *See E.E.O.C v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992) (holding employer free to reorganize workforce so long as did not violate ADEA). The Court cannot draw from the totality of Perry's evidence, viewed in a light most favorable to Perry, that CSC's stated reason for reorganizing the department was a pretext for discriminating against Perry.

### D. FMLA

Plaintiff also claims that she was terminated in violation of the FMLA (Count VI). Under the FMLA, an "eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period... because of a serious health condition that makes the

employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612. It is undisputed that Perry commenced her authorized FMLA leave on October 13, 2008. It also undisputed that CSC terminated Perry after her leave expired on January 4, 2009. Thus, CSC did not violate the FMLA by terminating Perry on April 30, 2009, after her FMLA leave period expired.

## VI. CONCLUSION

Based on the record before the Court, there are no genuine issues of material fact, and CSC is entitled to judgment as a matter of law as to each of Plaintiff's claims set forth in the Complaint. Accordingly, for the above stated reasons, Defendant Computer Sciences Corporation's Motion for Summary Judgment is granted and all of Plaintiff's claims are dismissed.

An appropriate Order will issue.

/s/
_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
September 21, 2010